

## NUMBER 13-07-00673-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**MICHAEL GABRISH,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

---

**On appeal from the 319th District Court of Nueces County, Texas.**

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Justice Yañez

Appellant, Michael Gabrish, pursuant to a plea bargain, pleaded guilty to driving while intoxicated.[1]  Appellant was sentenced to nine years and six months in the Texas Department of Criminal Justice Institutional Division.[2]  By two issues, appellant asserts that

---

[1] *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003).

[2] *See id.* § 49.09(b)(2) (Vernon Supp. 2008) (providing that an offense under section 49.04 of the penal code is a third degree felony if the defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated").  In his judicial confession and

the trial court erred when it denied his motion to suppress and when it overruled his objection to alleged hearsay. We affirm.

## I. Background

Appellant was indicted for the offense of driving while intoxicated. Appellant filed a motion to suppress seeking to suppress any evidence obtained after being stopped by a police officer. Appellant argued that the officer did not have reasonable suspicion to stop him and did not have probable cause to arrest him.[3] The trial court conducted a hearing on appellant's motion. The State presented the testimony of Gayle Connolly, Bob Merrow, and Nicholas Kless, the police officer who detained and arrested appellant. The trial court denied appellant's motion to suppress.

In a plea agreement with the State, appellant pleaded guilty and agreed to a sentence of nine years and six months' confinement, and the State agreed to dismiss a paragraph in the indictment alleging that appellant was a habitual felony offender. Appellant appeals the trial court's denial of his motion to suppress.[4]

## II. Motion to Suppress Hearing

At the motion to suppress hearing, Connolly testified that while at a restaurant in a shopping center, she observed a car driven by the appellant screech to a stop as he attempted to park his vehicle. According to Connolly, after finally parking his car, appellant began rifling through the back seat of the vehicle, and it appeared that appellant was

---

stipulation, appellant admitted that he had previously been convicted of driving while intoxicated two times.

[3] On appeal, appellant does not contend that the officer lacked probable cause to arrest him.

[4] The trial court certified that appellant had the right to appeal "matters [that] were raised by written motion filed and ruled on before trial and not withdrawn or waived." *See* TEX. CODE CRIM. PROC. ANN. § 44.02 (Vernon 2006).

2

searching for cigarettes, which he eventually located. Appellant exited the vehicle and began urinating in the parking lot. Connolly testified that appellant was "obviously intoxicated" because he was staggering, fumbling with his cigarettes and lighter, and urinating in a public place. Connolly stated, "It was patently clear that [appellant] was intoxicated." Connolly saw appellant enter and exit another store in the shopping center; she assumed he entered a nearby bar. According to Connolly, appellant spent a "couple of minutes" in that store. Connolly acknowledged that she did not actually know whether appellant had been in the bar. Appellant then staggered to his vehicle and drove to a nearby intersection. The police officer arrived and either she or Merrow, Connolly's friend, pointed to appellant's vehicle that was stopped at a street light and told the officer, "That truck, right there." Connolly stated the officer immediately left.

On cross-examination, Connolly clarified that when the officer left, she observed the police car follow appellant's vehicle. Connolly admitted that she did not give the officer any personal information, such as her name, address, or phone number. Connolly explained that Merrow informed her of the hearing. On re-direct examination, Connolly testified that she wanted to call the police because appellant "was driving dangerously. He was barely able to walk upright and was most decidedly not in any condition to be driving a giant chunk of metal on the midday roads. He was a danger."

Merrow testified that he was a police officer for "[j]ust under 32 years," and is now retired. Merrow was having lunch with his friend, Connolly, when he heard the "screeching of [appellant's] brakes." Merrow stated,

> I turned around and looked, and he was, like he was parked up at the, you know, the little concrete stop there to keep you from coming in the window, and I couldn't figure out why he slammed on his breaks [sic] at this point. And then he backed up and then parked in the center of the parking lot,

3

slamming on his brakes, again.

When appellant exited his vehicle, Merrow thought appellant seemed "distracted" and while looking for something in his vehicle, "he kind of like tilted over to the side, hit the frame of the car with his hip." Merrow told Connolly that appellant was drunk. According to Merrow, appellant closed the door to his vehicle and began urinating. Appellant was not facing Merrow and Connolly while he urinated.

Merrow called 911 on his personal cell phone and informed the dispatcher that "there was a DWI in the parking lot of Moody's Taco Place, and that he [appellant] had just gone into the bar at Macaw's, and probably would be coming out fairly shortly afterwards." Merrow told the 911 operator that he believed that appellant was drunk because he had urinated in the parking lot and because of his "lack of stability as he controlled himself." Merrow stated that when he called 911, he gave the dispatcher appellant's license plate number, identified himself, and mentioned that he was a retired police officer. However, he did not give his home address or phone number. According to Merrow, based on his experience as a police officer, he knew that his phone number would appear when he called 911 and that by identifying himself, the police would later be able to contact him.

After Merrow called 911, appellant drove away in his vehicle, and the police officer arrived in the parking lot. Merrow informed the police officer that "the DWI I had just called in had just left the parking lot and he was out on Saratoga. And I pointed to the gentleman's vehicle setting (sic) at the left turn light at Saratoga and Weber." According to Merrow, the police officer understood which vehicle he pointed out because it was the only vehicle matching the description he gave and it was the first car in line at the "turn signal." Merrow observed that the police officer drove after appellant's vehicle and turned

4

on his "overhead lights." On cross-examination, Merrow stated that the prosecutor acquired his name and phone number from the police department. On re-direct examination, Merrow explained that urinating in a public place is illegal, and an "arrestable offense."

Officer Kless testified that while on patrol, he received a dispatch that an individual was urinating on the side of a building. He did not recall whether dispatch told him the license plate number of the vehicle that appellant was driving. Officer Kless went to the shopping center in his marked police unit, and when he arrived in the parking lot, three individuals approached him. Officer Kless stated,

> Well, the first thing they did was they directed my attention to a vehicle that was at the intersection of Saratoga and Weber. And they said that that individual had just urinated in public and was extremely intoxicated. . . . After they said that, just for the safety, I didn't have time to get their information, or anything like that. I didn't want him driving any further if he was that intoxicated. And I pulled in behind him and proceeded to stop him.

According to Officer Kless, he turned on his overhead lights, but appellant did not immediately pull over and instead continued to drive into an apartment complex. Officer Kless stated, "[appellant] kept on going through the entire apartment complex to the very back, where he pulled into a parking space." Officer Kless believed that he followed appellant with his overhead lights on for approximately a quarter of a mile and that there were "many" safe spots appellant could have stopped. It concerned Officer Kless that appellant did not immediately pull over. When appellant finally parked his car at the apartment complex, Officer Kless observed that appellant was intoxicated. According to Officer Kless, appellant had slurred speech, needed assistance to stand, had "glassy bloodshot eyes," and smelled of an intoxicating beverage. Officer Kless administered an HGN test and appellant showed six clues; Officer Kless asked appellant to perform several

5

other field sobriety tests, which appellant refused to do. Officer Kless arrested appellant.

On cross-examination, Officer Kless stated that he did not know the people who pointed out appellant's vehicle. He also clarified that when appellant turned into the apartment complex, he drove "all the way to the back [of the parking lot] and a left, and circled back around." Although appellant did not commit any traffic violations, Officer Kless stated that he had already decided to stop appellant based on the information he acquired from the people at the shopping center.

### III. DENIAL OF MOTION TO SUPPRESS

By his first issue, appellant contends that the trial court erred in denying his motion to suppress. Specifically, appellant argues that police corroboration "that indicated criminal activity was underway" was required because Officer Kless stopped appellant based on information he acquired from "witnesses who were truly anonymous."

#### A. Applicable Law and Standard of Review

A temporary detention by a police officer is lawful if the officer has a reasonable suspicion to believe that an individual is violating the law.[5] "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."[6] When the appellant challenges the reasonableness of a temporary detention, as in this case, we must determine whether reasonable suspicion existed to make the stop based on the totality of the circumstances.[7]

---

[5] *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)).

[6] *Id.* (citing *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).

[7] *Id.* at 492-93.

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion."[8] At a motion to suppress hearing, the trial court is the sole judge of the credibility of the witnesses and the weight given to their testimony.[9] We must give almost total deference to the trial court's rulings on questions of historical fact.[10] However, we conduct a de novo review of the trial court's application of law to facts not turning on credibility and demeanor.[11]

We view the evidence in the light most favorable to the trial court's ruling when the trial court did not file findings of fact.[12] We assume that the trial court made the implicit findings of fact supporting its ruling if they are supported by the record.[13] We will uphold the trial court's decision if it is correct on any theory of law applicable to the case.[14]

## B. Discussion

Appellant argues that Officer Kless did not have reasonable suspicion to make the initial stop because (1) he did not personally observe any criminal activity, (2) Merrow and Connolly were not reliable because they were anonymous, and (3) Officer Kless did not

---

[8] *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2008).

[9] *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

[10] *Ford*, 158 S.W.3d at 493; *Ross*, 32 S.W.3d at 856 (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88 n.3 & 90-91 (Tex. Crim. App. 1997)).

[11] *Ford*, 158 S.W.3d at 492 (citing *Guzman*, 955 S.W.2d at 88-89).

[12] *Id.* at 493.

[13] *Ross*, 32 S.W.3d at 855 (citing *Carmouche*, 10 S.W.3d at 328; *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

[14] *Amador*, 275 S.W.3d at 878-79; *Ross*, 32 S.W.3d at 855.

corroborate Merrow's and Connolly's information.  We disagree.[15]

Officer Kless's suspicion that appellant had been or was engaged in criminal activity was based on the information he received through the 911 dispatcher and two, perhaps three, citizen eyewitnesses.  Officer Kless was told in a face-to-face encounter that appellant was intoxicated and had urinated in a public place.  After confirming which vehicle appellant was driving, Officer Kless immediately began following him and turned on his overhead emergency lights.  Appellant failed to stop when Officer Kless turned on his lights, and instead drove for approximately a quarter of a mile to an apartment complex, circled the parking lot, and parked his car.

In *Brother v. State*, the Fort Worth Court of Appeals concluded that a police officer's reasonable suspicion to make a stop does not have to be based on the officer's personal observations and may instead be supplied by information acquired from another person's tip bearing sufficient indicia of reliability.[16]  The court of criminal appeals affirmed stating, "To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny."[17]  Moreover, an officer may form his reasonable suspicion on facts supplied by a citizen eyewitness, which he

---

[15] *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) ("The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person."); *see also Marquez v. State*, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987) (en banc) (providing that information provided by an identified citizen eyewitness is presumed to be reliable when included in an affidavit supporting a search warrant); *Adams v. Williams*, 407 U.S. 143, 147 (1972) (concluding that if an informant has an indicia of credibility or reliability, an officer is not required to have personally observed the crime).

[16] *Brother v. State*, 85 S.W.3d 377, 380-81 (Tex. App.–Fort Worth 2002), *aff'd*, 166 S.W.3d 255 (Tex. Crim. App. 2005).

[17] *Brother*, 166 S.W.3d at 259.

8

adequately corroborated.[18] Less corroboration is needed when the information's reliability is increased.[19] "[C]orroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified."[20]

Although a tip from an unknown informant standing alone will rarely support the suspicion necessary to justify an investigative detention, a citizen who reports that a crime is or has occurred, should be given greater weight than an anonymous phone call.[21] "It has been widely recognized that the reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her."[22]

In this case, Officer Kless had sufficient information to warrant the investigative detention of appellant. Neither Merrow nor Connolly were paid informants; they were concerned citizens. Merrow and Connolly placed themselves in a position where they could be held accountable for their intervention.[23] Merrow identified himself to the 911

---

[18] *Id.*

[19] *Brother*, 85 S.W.3d at 381.

[20] *Brother*, 166 S.W.3d at 259 n.5.

[21] *See State v. Garcia*, 25 S.W.3d 908, 912-13 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (commenting that the reliability of the information from an individual who presents himself to an officer in person and whose identity might easily be traced is increased); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.–Fort Worth 1995, pet. ref'd) (explaining that "information from a citizen who confronts an officer in person to advise the officer that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer").

[22] *Brother*, 166 S.W.3d at 258.

[23] *See Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (concluding that the informant was not a "truly anonymous informer" because he placed "himself in a position where he could be held accountable for his intervention") (citing *State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.–Austin 2001, no pet.)); *see also Gansky v. State*, 180 S.W.3d 240, 247 (Tex. App.–Fort Worth 2005, pet. ref'd) (concluding that although the informants were unknown to the officer, at least one informant stopped "which would have at least made him identifiable had [the officer] stopped to get his identification").

dispatcher, reported appellant's license plate number, and the State was able to contact him based on his call to 911. Merrow testified that based on his experience as a police officer, his cell phone number would have appeared on the dispatcher's caller ID. Both Merrow and Connolly made face-to-face contact with Officer Kless.[24] Merrow gave a detailed description of the wrongdoing that he observed firsthand to Officer Kless. Merrow informed Officer Kless that appellant appeared intoxicated and had just urinated in a public place. Both Connolly and Merrow pointed out appellant's vehicle to Officer Kless, and he testified that he immediately followed appellant's vehicle with his overhead emergency lights turned on.[25] Appellant did not stop when Officer Kless turned on his overhead lights.[26] Thus, because Merrow and Connolly placed themselves in a position where they could have been easily identified and held responsible for their intervention, the information they provided bore sufficient indicia of reliability to support a temporary investigative detention.[27]

We conclude that based on the totality of the circumstances reasonable suspicion

---

[24] *See Gansky*, 180 S.W.3d at 247 ("Unsolicited information concerning a crime in progress provided to police in a face-to-face encounter by a concerned citizen who is not connected with police and is not a paid informant is inherently reliable."); *see also Giles v. State*, 13-06-570-CR, 2007 Tex. App. LEXIS 6757 at *14-15 (Tex. App.–Corpus Christi Aug. 23, 2007, no pet.) (mem. op., not designated for publication) (concluding that "unsolicited information concerning a crime in progress provided to the police by a concerned citizen is inherently reliable").

[25] *See, e.g., Ramirez v. State*, 658 S.W.2d 808, 810 (Tex. App.–Corpus Christi 1983), *aff'd*, 672 S.W.2d 480 (Tex. Crim. App. 1984) ("[P]robable cause requirements for warrantless searches have been met where officers acted immediately upon information furnished to them by witnesses to a crime without having to first investigate the reliability and credibility of those witnesses.").

[26] *See Guzman*, 955 S.W.2d at 90 ("[A]voiding officers is a factor to consider when determining probable cause.").

[27] *See Brother*, 85 S.W.3d at 380-81; *see also Giles*, 2007 Tex. App. LEXIS 6757, at **14-15; *Gansky*, 180 S.W.3d at 247; *Hawes*, 125 S.W.3d at 540.

existed to make the stop.[28]  Therefore, the trial court properly denied appellant's motion to suppress.  We overrule appellant's first issue.

## IV. HEARSAY TESTIMONY AT THE SUPPRESSION HEARING

By his second issue, appellant contends that pursuant to rule 801(d) of the rules of evidence, the trial court erred by admitting inadmissible hearsay at the suppression hearing.[29]

However, because the rules of evidence, except with respect to privileges, do not apply to suppression hearings, even assuming that the complained-of testimony was hearsay, the trial court did not err by allowing it.[30]  We overrule appellant's second issue.

## V. CONCLUSION[31]

We affirm.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 26th day of August, 2009.

---

[28] *See Ford*, 158 S.W.3d at 492-93.

[29] *See* TEX. R. EVID. 801(d).

[30] *See Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (stating that, with the exception of rules governing privileges, the rules of evidence do not apply to suppression hearings); *Turner v. State*, 132 S.W.3d 504, 508 (Tex. App–Houston [1st Dist.] 2004, pet. ref'd) (concluding that the "trial court did not err in admitting [the alleged hearsay] statements because the rules of evidence did not apply to appellant's hearing"); *see also* TEX. R. EVID. 104 (stating that "preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . .  In making its determination the court is not bound by the rules of evidence except those with respect to privileges").

[31] We note that the trial court conducted a hearing and found appellant indigent.  Subsequently, the clerk's record and the reporter's record were filed with this Court.  Therefore, appellant's motion, carried with the case on March 6, 2008, requesting a free clerk's record and a free reporter's record is denied as moot.